Syllabus.

NATIONAL FURNACE COMPANY

v.

KEYSTONE MANUFACTURING COMPANY.

*Filed at Ottawa May 19, 1884.*

1. AGENCY—*general agent—what constitutes.* A general agent is one authorized to transact all the business of his principal, or all his business of some particular kind.

2. SAME—*proof of usage, in ascertaining the powers of an agent.* In the case of a general agent the law permits usage to enter into and enlarge the liability of the principal, in respect to contracts made by the agent; and it has been held that the usages of a particular trade or business are admissible for the purpose of interpreting the powers given to an agent or factor.

3. SAME—*extent of the powers of an agent in the particular case.* A corporation engaged in the manufacture of pig iron, adopted, through its directory, a resolution, as follows: "Resolved, that A B, of Chicago, be and is hereby appointed and employed by this company as its sole agent for the consignment and sale of its entire product, he to receive a commission," etc. This agent assumed to authorize another to make contracts in respect to the subject matter of the agency, and the latter did contract, on behalf of the corporation, with another manufacturing company, to supply the latter with all the pig iron they should need, use or consume in their business during the then ensuing season of such business. It was shown to have been the custom in Chicago for iron brokers to employ salesmen to make contracts with manufacturers of like kind for the year's supply of iron, to be delivered as ordered. On the question as to the authority of the agent, it was *held*, that under the resolution appointing him, in connection with the usage of trade in Chicago among this class of dealers, he had authority, as the general agent of his principal, to contract, through the instrumentality employed, for the sale of iron thereafter to be produced, and to be delivered in the future as ordered. His authority was not limited merely to the sale of the iron when it was ready for the market.

4. And aside from any usage or custom among dealers, the resolution of appointment itself was broad enough in its terms to constitute the person appointed the general agent of the principal, in respect to the business to which it related, and authorized him to contract for the future delivery of iron, as was done.

5. CONTRACT—*mutuality.* A contract between a manufacturer of pig iron and another who is engaged in a business requiring the use of that article, that the former will supply to the latter, and that the latter will purchase from him, all the pig iron which he should need, use or consume in his

business during the then ensuing season of such business,—fixing the limit of time,—such amount supposed by the parties about a certain named quantity, is not wanting in the element of mutuality. The buyer is as much bound to procure from the seller all the pig iron he should need in his business during the stipulated time, as the seller is to furnish it.

APPEAL from the Appellate Court for the First District;— heard in that court on appeal from the Superior Court of Cook county; the Hon. SIDNEY SMITH, Judge, presiding.

Mr. FREDERIC ULLMANN, for the appellant:

As to the want of mutuality in the contract in this case: *Bailey* v. *Austrian*, 19 Minn. 535; 1 Parsons on Contracts, 449; *Chicago and Great Eastern Ry. Co.* v. *Dane*, 43 N. Y. 240; *Houston and Texas Central Ry. Co.* v. *Mitchell*, 38 Texas, 94; *Burton* v. *Railroad Co.* 9 Ex. 507; *Great Northern R. R. Co.* v. *Witham*, L. R. 9 C. P. 16; 1 Wharton on Contracts, sec. 14; *Thayer* v. *Burkland*, 99 Mass. 508.

Messrs. MANAHAN & WARD, and Mr. C. H. ROBERTS, for the appellee:

The distinction between a general and special agent is clearly defined by law. In the case of a special agent the scope of his authority is measured by the express directions he has received. In the case of general agents the law permits usage to enter in and enlarge the liability of the principal. 1 Parsons on Contracts, 40, and cases cited.

A special agent can not bind outside of his authority. *Thornton* v. *Boyden*, 31 Ill. 200.

A general agent, within the scope of his authority, may exceed printed instructions. *Home Life Ins. Co.* v. *Pierce*, 75 Ill. 246; *United States Life Ins. Co.* v. *Advance Co.* 80 id. 549; *Noble* v. *Nugent et al.* 89 id. 522; *Harris* v. *Simmerman*, 81 id. 413.

A general agent is one authorized to transact all of his principal's business, or all of his business of some particu-

lar kind, or at some particular place.  1 Parsons on Contracts, 40.

A general agent may deal in accordance with the usage of trade.  4 Bradw. 63 ; *Lyon* v. *Blair*, 83 Ill. 33 ; *United States Ins. Co.* v. *Advance Co.* 80 id. 549 ; *Bailey* v. *Bensley*, 87 id. 556.

The usages of a particular trade or business are properly admitted for the purpose of interpreting the powers given to an agent or factor.  *Phillips* v. *Moir*, 69 Ill. 155 ; *Lanssatt* v. *Lippincott*, 6 S. & R. 386, quoting Lord Mansfield, in *Wright* v. *Campbell*, 4 Burr. 2046.

An insurance agent can employ a clerk, and authorize him to contract for risks, etc., and the act of the clerk is the act of the agent, and binds the company.  *Bodine* v. *Ex. Ins. Co.* 51 N. Y. 117 ; *Savelin* v. *Green*, 40 Wis. 431.

An agent may appoint a sub-agent, where such is the usage of trade.  He may sell in his own name.  *Strong* v. *Stewart*, 9 Heisk. 148.

Where custom of business authorizes such substitution : Wharton on Agents, sec. 29 ; Story on Agency, sec. 14 ; *Eldridge* v. *Holway*, 18 Ill. 447 ; *Buckland* v. *Conway*, 16 Mass. 396.

There was mutuality in the contract.  *Smith* v. *Morse*, 20 La. Ann. 220 ; *Boutwell* v. *Keefe*, 32 Barb. 434 ; *Mahon* v. *Daly*, 70 Ill. 653 ; *Este* v. *Furlong*, 59 id. 299.

Mr. Justice Craig delivered the opinion of the Court:

This was an action brought by the Keystone Manufacturing Company, a corporation located at Sterling, Illinois, against the National Furnace Company, a corporation engaged in manufacturing pig iron at Depere, Wisconsin, to recover damages for the breach of a contract, under which it is claimed defendant sold plaintiff all of a certain quality of pig iron, known as "Lake Superior charcoal iron," which

plaintiff should need, use or consume in its business during the then ensuing season of such business, to-wit, from the 9th day of July, 1879, until July 1, 1880, such amount supposed by said parties to be about seven hundred tons.

It appears from the testimony, that A. B. Meeker & Co., of Chicago, were the sole agents of the appellant company for the consignment and sale of its entire product. This firm was composed of Meeker and Brown, who owned one-half of the capital stock of appellant. Smith and Hunt, the president and secretary, owned the balance of the stock. In 1879 William M. Cox was doing business in Chicago as a dealer in iron and coal, under the firm name of William M. Cox & Co. In 1878, Cherrie & Co., the firm of which Cox was then a member, had supplied appellee with the iron used that year in its business, Humphrey, who traveled for Cherrie & Co., having made the sale. In 1879 Humphrey was traveling for Cox & Co., and he made the sale of the iron in question for Cox & Co., who claimed to act by authority of A. B. Meeker & Co.

The first position of appellant is, that A. B. Meeker & Co. could not authorize Cox to bind the National Furnace Company by the contract in question, because they did not possess the power to bind the company by a contract for the future delivery of iron to be thereafter manufactured. The authority of Meeker & Co. to act for appellant will be found in a resolution adopted by appellant, as follows:

"*Resolved*, That A. B. Meeker & Co., of Chicago, be and are hereby appointed and employed by this company as its sole agents for the consignment and sale of its entire product, they to receive a commission," etc.

This resolution, it is claimed, only authorized the sale of the product of the furnace,—not to contract to sell its future product. We think this construction of the authority entirely too narrow. They were the sole agents for the sale of the entire product of the furnace. The terms of the resolution

are broad enough to constitute Meeker & Co. the general agents of appellant for the sale of its entire product. A general agent is one authorized to transact all of his principal's business, or all of his business of some particular kind. (1 Parsons on Contracts, 40.) In a note to the text it is said: "In the case of a general agent the law permits usage to enter in and enlarge the liability of the principal." In *Phillips* v. *Moir*, 69 Ill. 156, it was held that the usages of a particular trade or business are properly admitted, for the purpose of interpreting the powers given to an agent or factor. See, also, *Lyon* v. *Blair*, 83 Ill. 33, where the same principle is announced.

It is clear, from the evidence, that it was the custom in Chicago for iron brokers to employ salesmen to travel on the road and make contracts with manufacturers, like appellee, for the year's supply of iron, to be delivered as ordered. Indeed, appellant had furnished iron sold to others the same year this contract was made, which had been sold to be delivered in the future, according to such custom. The resolution, in connection with the usage of trade in Chicago among this class of dealers, clearly authorized Meeker & Co. to contract the product of appellant, to be delivered in the future. But, aside from the custom, we think the authority to sell broad enough to authorize sales for future delivery. Appellant had the undoubted right to contract with appellee to furnish a year's supply of iron, to be delivered as it was needed in their business. It saw proper to delegate authority to sell, to Meeker & Co. They were made the sole agents for the sale of the entire product of the furnace, and, in our judgment, a fair and reasonable construction of the authority did not prevent Meeker & Co. from contracting the sale of the iron in advance, as was done here. The refusal of the court to give appellant's instructions on this branch of the case, and the giving of appellee's instructions, was therefore, in our judgment, correct.

But it is insisted, even if Meeker & Co. could authorize Cox to bind appellant by contract, there is no evidence that they ever delegated such authority to Cox. There was evidence tending to prove that Meeker & Co. authorized Cox to make the contract, and while the sufficiency of the evidence upon this point was a proper inquiry in the Appellate Court, under our practice the decision of the Appellate Court on a controverted question of fact can not be reviewed here. The same answer may properly be made to appellant's third point.

The fourth point relied upon by appellant is : "Even if made by authority, the contract is not binding on appellant for want of mutuality." In the argument it is said : "Assuming that appellant had in reality authorized the making of a contract, by which it was to supply all the iron that might be needed in appellee's business during the season of 1879, at $22.35 per ton, delivered on the cars at Sterling, it is urged that such a contract would be void for want of mutuality." And upon this branch of the case appellant asked the following instruction :

"If the jury believe, from the evidence, that the defendant did contract, through Cox, to sell the plaintiff all the National iron which the plaintiff might need for its season's supply for the year or season of 1879, they are instructed that such a contract is void for want of certainty and for want of mutuality, and they will find their verdict for the defendant."

This the court refused, and in lieu thereof gave the following for plaintiff :

"The court instructs the jury, that if they find, from the evidence in this case, that in July or August, 1879, the defendant, by its agent or agents, made a contract with the plaintiff, by which the defendant agreed to sell and deliver to the plaintiff, on the cars, at Sterling, Illinois, sufficient Lake Superior charcoal pig iron of its own manufacture, for

the then current season's supply (ending June 30, 1880,) of the plaintiff's business, at the price of $22.35 per ton, to be delivered on plaintiff's orders or requisitions, from time to time, as fast as needed to keep up such supply, the plaintiff agreeing, in consideration thereof, to purchase said iron of the said defendant, and to order the same as so needed, and to pay defendant therefor, at the price aforesaid, upon the delivery of each car load at Sterling, such a contract would be valid in law, and mutually binding upon the respective parties thereto."

The decision of the court upon the point involved in the two instructions is the main question presented by the record.

The undertaking, here, was substantially this: Appellant agreed to deliver in car, at Sterling, Illinois, all the iron that appellee needed in its business during the then ensuing year, at $22.35 per ton. Appellee, on its part, agreed to take its year's supply of iron of appellant, and pay for the same $22.35 per ton. We do not regard the contract void on the ground stated. It is true that appellee was only bound by the contract to accept of appellant the amount of iron it needed for use in its business; but a reasonable construction must be placed upon this part of the contract, in view of the situation of the parties. Appellee was engaged in a large manufacturing business, necessarily using a large quantity of iron in the transaction of its business. It is not to be presumed that appellee would close its business and need no iron, but, on the contrary, the reasonable presumption would be that the business would be continued, and appellee would necessarily need the quantity of iron which it had been in the habit of using during previous years. It can not be said that appellee was not bound by the contract. It had no right to purchase iron elsewhere for use in its business. If it had done so, appellant might have maintained an action for a breach of the contract. It was bound by the

28—110 ILL.

contract to take of appellant, at the price named, its entire supply of iron for the year,—that is, such a quantity of iron, in view of the situation and business of appellee, as was reasonably required and necessary in its manufacturing business. Such contracts are not unusual. A foundry may purchase its supply of coal for the season, of the coal dealer. A hotel may do the same. A city, for the use of the public schools, may engage its supply of coal for the winter, at a specified price. Such contracts are not uncommon, and we have never understood that they were void. *Smith* v. *Morse*, 20 La. Ann. 220, is a case in point. In this case Smith agreed to furnish Morse all the ice he might require for the use of his hotel for five years, at a certain price. Smith undertook to avoid the contract, on the ground that Morse was not bound, but the court held the contract valid and binding on both parties.

*Bailey* v. *Austrian*, 19 Minn. 535, has been cited as an authority by appellant. The facts in that case are somewhat similar to the facts here, but we think there is a distinction between the cases. In the case cited the contract provided that defendant should supply plaintiffs with what iron they should want, and the court turn the decision of the case on the construction placed upon the word *want*. In the opinion it is said: "Upon the foregoing state of facts the engagement of plaintiffs was to purchase all of said pig iron which they might want in their said business during the time specified, but they do not engage to want any quantity whatever." Here, appellee purchased all the iron it needed in its business,—its entire supply,—while in the case cited no engagement was made of what was needed, or the entire supply, but only what they might *want*. We think there is a clear distinction between the two cases, and the rule announced in the Minnesota case does not control here.

Under a reasonable construction of the contract appellee was bound to take of appellant all the iron needed in its business that season, and bound itself not to purchase else-

where.   Two car loads of iron were received under the contract, and orders given for the remainder of the supply.   In view of all the circumstances we think the contract valid, and the construction placed upon it by the court in the instruction, correct.

The decision of the court in giving other instructions for appellee, and refusing other instructions asked by appellant, has been discussed in the argument, but we do not deem it necessary to go over all the objections in detail.   After a careful examination of all the instructions, we think the law involved in the case was given to the jury, and so far as instructions are concerned, no substantial error appears in the record.

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*