## American Refrigerator Transit Co. v. Charles H. Chilton.

1.  CONTRACTS—*When Unilateral.*—A contract by which a party agrees to sell and deliver to another all the ice he may require for a certain purpose, to be delivered at such times and in such quantities as directed, to be paid for on monthly statements on approved bills, etc., is purely unilateral, and not binding upon the purchaser.

Assumpsit, on a contract in writing. Appeal from the Circuit Court of Pike County; the Hon. JOHN J. GLENN, Judge, presiding. Heard in this court at the November term, 1900. Reversed except as to the costs. Opinion filed February 28, 1901.

Statement.—This suit was brought by appellee to recover damages from appellant for breach of the following contract:

"This agreement, made and entered into this 28th day of January, 1899, between C. H. Chilton, of Barry, Illinois, party of the first part, and the American Refrigerator Transit Company, of St. Louis, Mo., party of the second part, witnesseth:

That the said party of the first part hereby agrees to sell to said party of the second part all the ice the said second party may require for icing refrigerator cars, except cars loaded by Arthur Jordan & Co., at Barry, Illinois, from the 1st day of February, 1899, to the 1st day of February, 1900.

Said ice to be firm, clean and merchantable, and to be placed by said first party in bunkers of said cars, at such times and in such quantities as directed by the superintendent of said second party; and the said second party agrees,

in consideration thereof, to pay said first party for all ice delivered as per terms of this contract, at the rate of three 50-100 dollars ($3.50) per ton, payable on monthly statements on or before thirty days after receipt of same at St. Louis office, duly approved by the local representative of said second party.

       THE AMERICAN REFRIGERATOR TRANSIT COMPANY.

            By B. MOREHEAD, Purchasing Agent."

(Signed in duplicate.)

Appellee had for several years prior to the date of the contract been a dealer in ice in the city of Barry, Illinois.

The defendant below owned and operated, on various railroads, refrigerator cars, used in carrying fresh meats, poultry, etc., to various markets in the United States.

During the year, commencing February 1, 1899, and ending February 1, 1900, it was necessary to supply said refrigerator cars with quantities of ice at the various points and times at which and when the same were being loaded. The defendant's cars, for the time mentioned, were loaded with meats, poultry, etc., at Barry, and during the months of February and March, 1899, the plaintiffs furnished ice under the contract to the amount of thirteen and one-half tons, for which there was due him $47.25. The shipments in the refrigerator cars from Barry were made by The Arthur Jordan Company and by the Schoenfield-Loeb Produce Company of Jacksonville, Illinois. By the terms of the contract the cars loaded by the Arthur Jordan Company were excepted, and the view taken by the plaintiff was that he was to furnish all the ice for shipments made by the Schoenfield-Loeb Produce Company. That company, after the plaintiff had cut and stored the most of his ice, had cut and stored in an ice-house rented for it, a large supply of ice which it insisted on using for its own shipments. The plaintiff objected to this and entered into a correspondence with the officers of the defendant company, which resulted in its being decided by its superintendent that the Shoenfield-Loeb Produce Company had the right to furnish its own ice for the cars in which it shipped out its produce from Barry, and directed the plaintiff to desist from icing the cars in which said company was shipping its

produce.  The plaintiff was left with a large supply of ice on his hands which melted and went to waste.

Plaintiff contended in the court below that he was entitled to damages for all the ice needed by the Shoenfield-Loeb Produce Company, which he was ready and willing to supply and had on hand to supply for the years covered by the contract.  The defendant contended that it was liable only for the ice actually delivered, and no duty was imposed upon it to pay for more ice than that which was actually received.  Under the view taken by the court of the contract, the contention of plaintiff was adopted and the jury, being instructed according to that view, returned a verdict against the defendant for $782.25.

PERCY WERNER and MATTHEWS & GRIGSBY, attorneys for appellant.

Appellant was only bound to pay for all the ice delivered, as directed by its superintendent.

The contract declared on is purely unilateral, and never became binding upon defendant.  Savannah Ice Delivery Co. v. A. R. T. Co., 35 S. E. Rep. 280;  Morrow v. Southern Express Co., 101 Ga. 810;  American Cotton Oil Co. v. Kirk, 68 Fed. Rep. 791;  Allen v. Rouse, Hazard & Co., 78 Ill. App. 69;  Vogel v. Pekoc, 157 Ill. 339.

WILLIAMS & COLEY, attorneys for appellee.

MR. PRESIDING JUSTICE HARKER delivered the opinion of the court.

The rights of the parties to this suit must be determined by the terms of the written contract entered into on the 28th day of January, 1899.  We can not resort to extrinsic evidence for the purpose of reading into the contract what does not appear there.  The language employed with reference to appellant's undertaking is not of such doubtful character as to justify an inquiry into surrounding circumstances and prior negotiations to discover the intention of the parties.  The only obligation resting upon appellant was to pay appellee " for all ice delivered as per terms of this

contract at a rate of $3.50 per ton." And such delivery was to be " at such times and in such quantities as directed by the superintendent," of appellant. The agreement of appellee to furnish appellant all the ice it might require for icing its refrigerator cars, except cars loaded by the Arthur Jordan Company, was purely unilateral. Appellee agreed to furnish for a specified price all the ice which appellant might require at Barry, except for cars used by the Arthur Jordan Company, but appellant did not agree to take all that might be required by it. The contract being unilateral except as to the payment of $3.50 for such ice as should be delivered, was of no binding force upon appellant except as to the thirteen and one-half tons received. American Cotton Oil Co. v. Kirk, 63 Fed. Rep. 791; Morrow v. Southern Express Co., 101 Ga. 810; Savannah Ice Co. v. American Refrigerator Transit Co., 35 S. E. Rep. 280. The last case is exactly in point, as the same contract substantially was before the court for construction. In that case the ice company had refused to supply the ice required and the car company recovered damages in the trial court. On appeal to the Supreme Court, the judgment was reversed, the court saying, on the feature of the case here considered, " The within instrument declared upon is, apparently, open to the objection that the contract therein set forth is purely unilateral. If so, it never became binding on the defendant."

In support of the construction contended for by appellee, The National Furnace Co. v. Keystone Manufacturing Co., 110 Ill. 427, and The Minnesota Lumber Co. v. Whitebreast Coal Co., 160 Ill. 85, are cited. The contracts involved in those cases differ very materially from this one. In the first case, the National Furnace Company agreed to sell and deliver all the pig iron needed by the Keystone Manufacturing Company in its business, during the then ensuing year, at $22.35 per ton, and the Keystone Manufacturing Company, on its part, agreed to take its year's supply of pig iron from the National Furnace Company and pay therefor $22.35 per ton. In the other case, the

Whitebreast Coal Company agreed to furnish to the Minnesota Lumber Company all its requirements for anthracite coal for the ensuing season at a stipulated price per ton, and the Minnesota Lumber Company, on its part, agreed to buy all the requirements of coal, for the season, from the lumber company and pay the stipulated price. In the contract before us, appellant did not agree to take its requirements of ice from appellee for the ensuing year. The contract had the effect merely to bind it to pay $3.50 per ton for such ice as should be ordered and delivered to it. Further than that, it had no binding force for want of mutuality. It is clear, therefore, that the judgment, except as to the $47.25, must be reversed. The judgment of the court below will be reversed except as to costs, and the clerk of this court will enter judgment in favor of appellee for $47.25, and against him for the costs of this court.