AMES–BROOKS COMPANY v. ÆTNA INSURANCE COMPANY
and Others.[1]

May 31, 1901.

Nos. 12,597—(113).

**Breach of Contract—Bailey v. Austrian Distinguished.**

In an action for damages for the breach of an alleged contract to
insure the plaintiff's grain cargoes at stipulated rates, *held*:

1. The contract is not void because uncertain in its essential terms.

2. The mutual promises of the parties are a sufficient consideration to
support the contract, distinguishing Bailey v. Austrian, 19 Minn. 465
(535), and similar cases.

3. The evidence tends to establish the making of a valid contract to
insure as alleged; hence the trial court erred in dismissing the action.

Appeal by plaintiff from an order of the district court for St.
Louis county, Dibbell, J., denying a motion for a new trial. Re-
versed.

*J. L. Washburn* and *W. D. Bailey*, for appellant.

*Spence & Quarles* and *Billson, Congdon & Dickinson*, for respond-
ents.

START, C. J.

This action was brought to recover damages for the breach of an
alleged contract on behalf of the defendant to insure at stipulated
rates plaintiff's grain cargoes on the Great Lakes for the shipping
season of 1899. At the close of the plaintiff's evidence, the trial
court, on motion of defendants, dismissed the action as to all of
the defendants, and the plaintiff appealed from an order denying its
motion for a new trial.

Evidence was given on the trial, which, taking, as we must do,
the most favorable view of it for the plaintiff, tends, in connection
with the admissions in the pleadings, to show these facts: That
the plaintiff, a corporation, has been engaged for many years at
Duluth in the business of receiving and shipping grain by water
from the port of Duluth to Buffalo and lower lake ports. Its busi-

[1] Reported in 86 N. W. 344.

ness was an old and well-established one, and as an incident thereto it was necessary for it to, and it did, secure a large amount of marine insurance on its grain cargoes during each season of navigation. The defendants are twelve insurance companies, and during the years 1898 and 1899 they did business as a voluntary association or syndicate under what is designated in the record as the "joint cargo certificate" plan, whereby each member issued to the agent of the syndicate at Duluth an open policy, with loss, if any, payable as interest might appear. These policies were retained by the agent, who issued to the insured a cargo certificate on each shipment, containing the name of the insurer and a statement of the amount insured, the property insured and its value, the name of the vessel in which it was shipped, its port of destination, and the percentage of loss, if any, which should be paid by each member of the syndicate.

During the years named, and prior years, Capt. A. B. Wolvin represented the syndicate at Duluth, and Capt. David Vance, of Milwaukee, the general agent of one or more of the members of the syndicate, and a member of the governing committee thereof, was accustomed to come to Duluth about the close of each season, and arrange with the plaintiff for its marine insurance for the then coming season. In the fall of 1897 he came to Duluth, and, purporting to act for the syndicate, entered into a contract on its behalf with the plaintiff to the effect that the syndicate should have the plaintiff's insurance for the season of 1898, and that the rates therefor should be as low as any other insurers would carry it. Upon this agreement the insurance business of 1898 was carried on between the plaintiff and the syndicate, which wrote the plaintiff's insurance for that season, pursuant to the contract, at rates agreed upon in the spring before the opening of navigation. In the fall of 1898, Capt. Vance came to Duluth, and, purporting to act for the syndicate, entered into a contract with plaintiff that the insurance business of the latter for the season of 1899 for Buffalo and lower lake ports should be given to the syndicate, and that the latter should write it at the same rates as in 1898.

Early in the year 1899 the rates for marine insurance were raised by the agreement of the competing insurance syndicates, and the

defendants, by Capt. Vance, refused to carry the plaintiff's insurance for 1899 upon the alleged agreement to do so for the rates and in accordance with the terms of the contract for 1898. After some dispute and negotiations between them as to the alleged contract to carry the insurance at the 1898 rates, an arrangement was made between the plaintiff and the defendants, represented by Capt. Vance, that the defendants should carry the insurance for 1899 at the increased rates, less a sum equal to the local agent's commission, but without prejudice to plaintiff's claim for damages for a breach of the alleged agreement to insure for the 1898 rates. The increase in rates for 1899 over those of 1898, which the plaintiff paid, was at least $9,000. No claim is made that rates paid by the plaintiffs for the year 1899 were not as low as those charged that year by any other companies or syndicates.

It is not entirely clear from the evidence whether the contract made between the parties in the fall of 1898 for the business of 1899 was as we have stated it, or simply to the effect that the syndicate should have the business for that year, and that the rates should be as low as any other companies would carry it; that is, substantially the same contract as was made in the fall of 1897 for the business of 1898. Of course, if the latter was the contract, the plaintiff would have no cause of action. But there was evidence tending to show the former was the contract which the parties made, and not the latter. The final testimony of the president of the plaintiff, who represented it in the negotiations as to the contract, was this:

"Q. What did he (Capt. Vance) say as to the rates at which he would carry you for the succeeding year? A. The rates at the same in 1899 as in 1898. Q. That is what he said? A. That is what he said. Q. What did you say as to whether he could have the business? A. I told him he could have the business; and I was very glad, indeed, to settle, because we had propositions leading up to a contract with other parties on the same basis, and I wanted to continue with Capt. Wolvin. Q. Had you had any offer to carry the insurance for the succeeding year? A. Yes. Q. From any other parties? A. Yes, sir. Q. And at what rate with relation to 1898? A. The same rate."

1. The first reason urged by the defendants why this action was properly dismissed is that the alleged agreement was so incomplete

and uncertain in its essential terms that it did not constitute a valid contract. If an alleged contract is so uncertain as to any of its essential terms that it cannot be carried into effect without new and additional stipulations between the parties, it is not a valid agreement. Counsel for defendants, in an exhaustive brief, urge the proposition that the contract which is made the basis for the plaintiff's damages in this case, falls within this rule. The difficulty, however, with this claim is that this is not an action upon a contract of insurance,—that is, a contract of indemnity against the loss of plaintiff's cargoes,—as the argument of counsel seems to assume. On the contrary, it is an action for the breach of an alleged contract to carry—that is, write—all the plaintiff's insurance for the year 1899 in the same way and at the same rates as the defendants carried such insurance for the year 1898.

In considering this question whether such a contract is sufficiently definite to be effective, a proper administration of justice will not permit us to be oversubtle, but we must interpret the contract from the standpoint of the practical business men who made it, which was the contract of 1898, and the established course of business between them. So construing the alleged contract, we hold it to be sufficiently definite in its terms to support an action for damages for its breach. The property to be insured was definite, for it was all of the plaintiff's cargoes of grain to Buffalo and the lower lake ports during the season of 1899. The amount of the premiums was ascertainable without any further contract, for they were to be based on the rates and classifications of the vessels carrying the cargoes as determined by the contract of 1898 and its execution, and the amount of insurance on each cargo would be determined in the same manner. If the defendants made the contract to issue the insurance to the plaintiff as claimed, it is immaterial whether there was any agreement as to the percentage of the loss, if any, each defendant should pay between themselves; for, in the absence of such a stipulation, they would be jointly liable to the plaintiff for the whole amount of the loss.

2. It is also urged by defendant that the alleged contract was void, because there was no mutuality of obligation, in that the plaintiff did not bind itself to have any cargoes to be insured, and

was at liberty, if it did have any, to insure them or not, as it pleased. If this be the correct interpretation of the supposed contract, it was not binding upon either party. Bailey v. Austrian, 19 Minn. 465 (535); Tarbox v. Gotzian, 20 Minn. 122 (139); Stensgaard v. Smith, 43 Minn. 11, 44 N. W. 669. In the cases cited there was no mutuality of obligation, for the promises were all on one side. In this respect they are distinguishable from this case, where the plaintiff was engaged in an established business, of which the insurance of its cargoes was a part; and the plaintiff, as the evidence tends to show, absolutely promised the defendants that they should have such insurance for the year 1899 on all of its cargoes to Buffalo and lower lake ports, and they, in turn, promised to write the insurance upon the terms of the 1898 contract. This presupposes the continuance of the plaintiff in the business for the year 1899, and included by necessary intendment a promise on its part not to give such insurance to any other party. This was a sufficient consideration for the defendants' promise. Minneapolis Mill Co. v. Goodnow, 40 Minn. 497, 42 N. W. 356; McMullan v. Dickinson Co., 63 Minn. 405, 65 N. W. 661, 663; National v. Keystone, 110 Ill. 427; Hickey v. O'Brien, 123 Mich. 611, 82 N. W. 241.

3. It is further claimed that the action was rightly dismissed, because there was no evidence that Capt. Vance was the agent of the defendants, and authorized to make the agreement on their behalf. He was the general agent of at least two of the defendants, and prima facie authorized to represent them in making the contract. The plaintiff would be entitled to recover against any of the defendants that made the contract. G. S. 1894, § 5412. But we hold that there was evidence for the consideration of the jury upon the claim of the plaintiff that Capt. Vance was the duly-authorized agent of all of the defendants. The evidence tends to show that they clothed him with apparent authority to act for them in making the contract. It tends to show that he had previously assumed to act for them in a similar transaction, and that the contract made by him on their behalf was carried out by them. A single act of an assumed agent, and a clear recognition of his authority by his principal, may be sufficient to prove his authority in other similar cases.

4. It follows that the evidence offered on the trial by the plaintiff was sufficient to take the case to the jury, and we hold that the trial court erred in dismissing the action, and that for this error a new trial must be granted. With reference to such trial, it is proper to add that it was also error for the court to refuse to allow the plaintiff to call Capt. Vance for cross-examination under the statute. It is true that his agency could not be proved by his admissions, but the plaintiff was entitled to so call and examine him with reference to his general acts and dealings in the business of the defendants in transactions similar to the one in question.

Order reversed, and a new trial granted.