## Semon Bache & Co. *v.* Coppes, Zook & Mutschler Company et al.

[No. 5,190.   Filed April 26, 1905.]

1. Contracts.—*Mutuality.*—*Enforcement.*—A contract lacking in mutuality can not be enforced.  p. 354.

2. Same.—*Obligation.*—A contract for a certain amount of glass, giving plaintiff the privilege of indicating the sizes and of canceling in the "event of emergency" is binding on both parties, the one to furnish the glass and the other to take it.  p. 355.

3. Same.—*Option of Cancelation.*—"*Emergency.*"—Where a contract gives plaintiff the privilege of canceling it in "the event of an emergency," and such "emergency" is not defined by such contract, it must consist of some such unforeseen event or combination of circumstances, considering the character of the business, as would furnish a substantial reason for its cancelation, the mere wish or desire of plaintiff not being sufficient.  p. 355.

4. Same.—*Cancelation.*—*Option.*—Where a contract gives defendant a right of cancelation on condition that the articles contracted for decline in price and he shall decline to meet such price, such contract is binding, and such option is unavailing where the price of such articles advance.  p. 356.

5. Same.—*For Goods for Plaintiff's "Requirements."*—A contract for goods as the plaintiff's "requirements" may demand them is obligatory on plaintiff, and he can not, without liability, buy such goods from any one else.  p. 357.

6. CONTRACTS.—*To Furnish Goods as Ordered.*—An offer by defendant to furnish goods as plaintiff ordered them was binding on defendant to the extent of the orders made before defendant's withdrawal of such offer. p. 358.

7. SAME.— *Construction.* — *Intention.* — *Certainty.* — Courts construe contracts so as to sustain rather than defeat them, and if they are sufficiently certain for the courts reasonably to ascertain their meaning, they will be enforced. p. 358.

8. EVIDENCE.—*Explaining Written Contract.*—Where a company contracted to take "currently" certain goods between certain dates, it was not improper to permit such company's superintendent to testify what was orally said as to the time between such dates of taking such goods. p. 359.

9. CONTRACTS.—*Sale of Goods.*—*Breach.*—*Damages.*—A recovery for the difference in the amount of the contract price of certain goods and the price plaintiff was compelled to pay for such goods, because of defendant's breach of contract, is not excessive. p. 360.

From Elkhart Circuit Court; *Francis D. Merritt,* Judge.

Action by Coppes, Zook & Mutschler Company against Semon Bache & Co. and another. From a judgment for plaintiff, defendant Semon Bache & Co. appeals. *Affirmed.*

*Miller, Drake & Hubbell,* for appellant.
*Deahl & Deahl,* for appellees.

BLACK, J.—The appellant was sued by the Coppes, Zook & Mutschler Company, appellee, and the other appellee, Hawks Furniture Company, was required to answer as garnishee.

The appellant questions for the first time, by assignment of error, the sufficiency of the complaint, and also assigns as error the overruling of the appellant's motion for a new trial.

The complaint against the appellant showed that the plaintiff and the appellant entered into a contract, May 22, 1902, which, it was alleged, was partly in writing and partly in oral terms. The three writings thus referred to were in substance as follows: First, by a writing dated at Nappanee, Indiana, May 22, 1902, addressed to the appellant at New York, N. Y., signed by the plaintiff, and

purporting to be accepted for the appellant by H. C. Feck-heimer, the appellant was requested to enter the order of the plaintiff for French mirror plates and German bevel, all of certain sizes, at specific prices and terms of payment, designating the number of plates of each of the sizes indicated; "the same to be taken currently as specified on order between July 1, 1902, and January 1, 1903. We are to have the privilege of changing sizes from specifications furnished or of canceling, in event of an emergency, such portions of the order that have not been taken in work by you. Prices guaranteed against decline, and, in the event of receiving lower quotations, you to have the privilege of meeting same or else of canceling such portions of order that have not been taken in work, and likewise the balance of this contract. Should we at any time have occasion to notify you of lower quotations which you are unable to meet, it is understood that such portions of our orders as are in process of manufacture with you are to be taken by us at the price at which orders were placed."

Another writing of the same date, signed and accepted as was the first one above mentioned, purported to be an order by the plaintiff to the appellant to ship to the plaintiff at Nappanee, by a specified railroad, 2,200 American Beauty mirrors, stating the prices and terms of payment, and stating the sizes and the number of each size, "to be shipped currently between June 1, 1902, and January 1, 1903."

The other writing, of the same date and place, addressed to the plaintiff, and signed by H. C. Feckheimer for the appellant, was as follows: "Referring to your order for 2,200 American Beauty plates, placed with Semon Bache & Co. through me to-day, I agree, and it should be so understood between us, that none of said orders are to be shipped, except as may be specified and ordered by you from time to time, as your requirements may demand same."

It was alleged in the complaint that the plaintiff, October 8, 1902, furnished specifications and ordered the appellant to prepare and ship to the plaintiff certain mirror plates, as in the contracts provided, patterns for which had theretofore been furnished by the plaintiff for the appellant, which the latter neglected, failed and refused to do; that at various other dates between that last mentioned and December 7, 1902, the plaintiff furnished patterns and specifications, and ordered and demanded the appellant to ship all the mirror plates contracted for under the terms of the contracts above mentioned; that the appellant failed, refused and neglected, "and still refuses to comply with the terms of said contracts, though the plaintiff has made frequent demands upon" the appellant to comply with and to carry out the terms and conditions of the contracts; that, because of the neglect and refusal, the plaintiff was compelled to and did purchase of other parties, at a much higher and greatly advanced price, such mirror plates, and was compelled to, and did, pay the sum of $1,066.50 in excess of the amount to be paid to the appellant under the contracts for such plates; that the plaintiff purchased such mirror plates at the lowest and best prices then obtainable; that it spent much time and means in making new contracts and negotiations for such mirror plates, and suffered great loss through the delay thus occasioned in getting the goods of the plaintiff upon the market, all to its damage in the sum of $1,500; that the plaintiff performed and complied promptly with each and all of the conditions and provisions of said contracts to be by it performed, and the damages aforesaid "have been occasioned" by and through the fault and neglect of appellant, without fault on the part of the plaintiff, all to its damage, etc. Wherefore, etc.

1. It is suggested by the appellant that the contracts sued on are too indefinite and uncertain, and are unilateral and not binding on the plaintiff, and therefore are not bind-

ing on the appellant. The proposals set forth in the first two writings were not only signed by the plaintiff, but also accepted in writing on behalf of the appellant; and the third writing, which referred to the second, was signed on behalf of the appellant; but these facts would not render the contracts enforceable, however clear and unambiguous in their terms, if one of the parties thereto was not thereby bound to do or give, or to refrain from doing or giving, something ascertainable by the terms of the contracts; that is, if, because of failure to impose any obligation on one of the parties, the contracts lacked mutuality.

2. Let us examine the writings separately. Referring to the first writing, the plaintiff stipulated that the goods were to be taken by the plaintiff currently as specified on order between specified dates; the plaintiff to have the privilege of changing sizes from those specified, or of canceling, in the event of an emergency, such portions of the order as had not been taken in work by the appellant. The plaintiff was thus bound to take, and therefore to order, the goods specified between the dates indicated, though it might require changes of specified sizes. The plaintiff would be bound to take the plates of the sizes specified in this writing, or to indicate changes desired, and to take the plates of other sizes as specified in ordering them. The plaintiff was not left at liberty to order or take if it wished or desired to do so, but was bound to take, by ordering, the plates of the kind indicated in this writing of the sizes indicated therein, or in the future orders which it bound itself to make within a specified time, except that the plaintiff reserved 'the privilege of canceling, "in event of emergency, such portions of the order that have not been taken in work by" the appellant. This, provision related to a future order whereby the plaintiff should propose to take currently any of the goods.

3. As to such portions of the goods thus ordered as

should not have been taken in work by the appellant after the giving of the order, the plaintiff was to have the privilege of canceling the order to that extent, "in event of an emergency." The nature of the "emergency" which should authorize a cancelation was not described. It would necessarily have to be some unforeseen event or unexpected combination of circumstances which, considering the character of the business to which the contract related, would furnish what might reasonably be regarded as a substantial reason for the cancelation. This would be a condition ascertainable by evidence. Such provision did not contemplate a cancelation at the mere wish or upon the simple dictation of the plaintiff. It was to be bound unless there should arise an actual condition which, having regard to the subject-matter of the contract, the plaintiff might reasonably pronounce to be an emergency in the business, and the plaintiff should, because thereof, direct the stoppage of further work under the particular order.

In *People* v. *Lee Wah* (1886), 71 Cal. 80, 11 Pac. 851, which was a prosecution for engaging in the practice of medicine without having procured a certificate, under a statute which declared that nothing therein contained should be construed to prohibit gratuitous service in cases of emergency, the court, holding that there was such an emergency as was contemplated by the statute, where there was an exigency of so pressing a character that some kind of action must be taken before any of the ordinary medical practitioners of the schools provided for by the statute, who were provided with the proper diplomas and had submitted themselves to the proper examination, could be readily obtained, instructed the jury that the facts of the case on trial did not constitute an emergency; and on appeal the trial court was sustained.

4. The privilege of cancelation by the appellant of portions of an order and the balance or unexecuted part of the contract was made dependent not upon the mere wish

of the appellant, but upon a further decline of prices, and the election of the appellant not to meet the decline. Before the appellant could be thus released from further performance, it would be necessary that the appellant should have received lower quotations, a contingency which does not appear to have arisen, the prices having in fact advanced.

5. Concerning the second and third writings, it is to be observed that the goods to which they related were also to be shipped, and therefore to be accepted, currently between specified dates. They were not to be shipped except as specified and ordered by the plaintiff from time to time, as the plaintiff's "requirements" might demand them. This did not relieve the plaintiff from obligation to order and to take the goods, unless its requirements should not demand them. If it should need the goods in its business, it would not be at liberty, without liability to the appellant, to procure them from any dealer other than the appellant.

In *National Furnace Co. v. Keystone Mfg. Co.* (1884), 110 Ill. 427, the plaintiff, a manufacturing company using pig-iron in its business, contracted with the defendant, engaged in making pig-iron, to the effect that the plaintiff would purchase from the defendant, and the defendant would supply to the plaintiff, all of a quantity of pig-iron which the plaintiff should need, use or consume from one specified date to another, the amount supposed by the parties to be a specified quantity. It was held that the contract was not wanting in mutuality. The court said: "It is true that the appellee was only bound by the contract to accept of appellant the amount of iron it needed for use in its business; but a reasonable construction must be placed upon this part of the contract, in view of the situation of the parties." The appellee "had no right to purchase iron elsewhere for use in its business. If it had done so, the appellant might have maintained an action for a breach of the contract." See, also, *Hercules Coal, etc., Co.* v. *Central Investment Co.* (1900), 98 Ill. App. 427; *Wells*

v. *Alexandre* (1891), 130 N. Y. 642, 29 N. E. 142, 15 L. R. A. 218.

In *Burgess, etc.; Fibre Co.* v. *Broomfield* (1902), 180 Mass. 283, 62 N. E. 367, the defendants, by their written proposal, accepted in writing by the plaintiff, offered to pay the plaintiff a specified price per ton "for all your iron which you may desire to sell. * * * This offer covers everything in the line of iron, whether located in your mill or on your premises, except galvanized iron, and is to be taken where found, we to assume all costs of removing the same, you to have privilege of indicating what you desire to have us take and of reserving what you wish. We furthermore agree to remove promptly all the iron which you wish us to take after acceptance of the proposition by you." The defendant refused to take the iron, and the plaintiff had it taken away by another dealer at a loss, and sued for the difference. It was held that the contract was valid and not lacking in mutuality. The court construed the contract in the light of the circumstances shown by the evidence stated in the opinion of the court. See *E. G. Dailey Co.* v. *Clark Can Co.* (1901), 128 Mich. 591, 87 N. W. 761; *Ames-Brooks Co.* v. *Aetna Ins. Co.* (1901), 83 Minn. 346, 86 N. W. 344.

6. If it might properly be said as to either of the writings that the plaintiff was under no obligation to order any of the goods, yet the obligation to furnish the goods would exist to the extent that they were in fact ordered by the plaintiff, as contemplated by the contract before the withdrawal of the offer to ship them. We think, however, that the plaintiff by the written contracts engaged to make the orders. This is a reasonable construction.

7. "Courts are to construe contracts so as to sustain rather than to defeat them, if that can reasonably be done. Certainty, not uncertainty, is to be sought for. It is only after applying all the tests which the rules of law and of reason will permit, to a contract, and a failure thereby to

discover, reasonably, what the parties agreed to, that the court should say it is too uncertain to be enforced." *McCall Co.* v. *Icks* (1900), 107 Wis. 232, 83 N. W. 300. See, also, *Cherry* v. *Smith* (1842), 3 Humph. 19, and note to that case in 39 Am. Dec. 152; *Laclede Constr. Co.* v. *Tudor Iron Works* (1902), 169 Mo. 137, 69 S. W. 384; *Sheffield Furnace Co.* v. *Hull Coal, etc., Co.* (1903), 101 Ala. 446, 14 South. 672; *Jordan* v. *Indianapolis Water Co.* (1902), 159 Ind. 337.

8.  On the trial, a witness, who at the time of the making of the contracts was treasurer of the plaintiff company and superintendent of its furniture department, having testified without objection that at that date he had a conversation with the agent of the appellant concerning the word "currently" in the contracts, was permitted, over objection, to testify in effect that when the contracts were entered into the plaintiff's factory was not constructed or built, and that the witness had a conversation with the appellant's agent as to the time when the factory would be completed so that the plaintiff could use the plates, and told him that it would be impossible for the plaintiff to use any of the plates earlier, that the plaintiff would not be in need of any of them, and for this reason would not want any of them shipped until the first of September, 1902, at the earliest, and that it might be some time later.

The contract evidenced by the first writing, as we have seen, provided that the goods to which it related were to be taken currently as specified on order between July 1, 1902, and up to January 1, 1903; and the goods referred to in the second writing were to be shipped currently between June 1, 1902, and up to January 1, 1903, as might be specified and ordered by the plaintiff from time to time, as the plaintiff's requirements might demand them. The first order for the shipment of plates was given October 8, 1902. It was not improper thus to permit the introduction of oral evidence showing the situation of the plaintiff,

and the circumstances under which the contracts were made, known to both parties and considered by them at the time, not for the purpose of contradicting the contracts or of adding to the terms thereof, but of explaining the purposes for which the contracts were made, consistently with terms so wanting in precision as to admit of more than one construction, and to be susceptible of such explanation, and thereby to give effect to the understanding and purpose of the parties, without contradicting the terms of the contracts or making other contracts for the parties. See 2 Jones, Evidence, §460; *Kauffman* v. *Raeder* (1901), 108 Fed. 171, 47 C. C. A. 278, 54 L. R. A. 247; *E. G. Dailey Co.* v. *Clark Can Co., supra; Guaranty Loan Assn.* v. *Rutan* (1892), 6 Ind. App. 83. Whether the evidence was or was not admissible with reference to the goods to which the first writing related, it tended to show when the requirements of the plaintiff began to demand the goods to which the second and third writings related, agreeably to the understanding expressed in the third writing.

9.   It is further claimed on behalf of the appellant that the damages were excessive, and that the finding was not sustained by sufficient evidence. We have carefully examined the evidence, and find little occasion for discussion concerning it. The goods were purchased by the plaintiff after being informed of the determination of the appellant not to furnish them. They were procured as soon as they could be obtained. They were bought at the market price and for the smallest price for which the plaintiff could purchase them. No attempt was made to show the contrary, and no objection is proposed to any evidence except as above mentioned. The evidence consisted of the contracts, certain stipulations on the trial, and the testimony of one witness introduced by the plaintiff. If what we have said concerning the contracts be correct, there was no available error.

Judgment affirmed.