## Armstrong Paint and Varnish Works, Appellee, v. Continental Can Company, Appellant.

### Gen. No. 26,060.

1. CONTRACTS, § 345*—*when person cannot sue for breach of contract.* One who has breached a contract to which he is a party cannot enforce it against the other or recover damages for the refusal of the other party to perform further after the breach.

2. SALES, § 65*—*how contract of sale is construed.* Where a contract provides that the seller agrees to sell and the buyers agree to purchase "a minimum of $2,000 worth of tin packages or more as required by them which buyers will need for actual use in their business" between certain dates, is to be construed as binding the buyers to purchase and the seller to deliver its product to the minimum amount of $2,000, and, while not requiring the buyers to

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

Armstrong P. and V. Wks. v. Continental Can Co., 220 Ill. App. 90.

take in excess of the minimum amount unless their business requirements necessitate it, does not permit them, while the contract is in force, to purchase such goods elsewhere, and by so purchasing elsewhere the buyers breach the contract.

3. SALES, § 61*—*what is evidence of intent of parties.* Where under a contract providing that the seller agrees to sell and the buyers agree to purchase "a minimum of $2,000 worth of tin packages or more as required by them ,which buyers will need for actual use in their business," the fact that during the life of the contract the buyers bought such commodity from others than the seller is cogent evidence that such purchases were needed by the buyers to meet their requirements within the meaning of the contract.

4. CONTRACTS, § 355*—*what must be alleged and proved in action for breach of contract.* One suing to recover damages for a breach of a contract must not only aver but must also prove that he is not himself in default as to the agreement for the breach of which the suit is brought.

Appeal from the Municipal Court of Chicago; the Hon. CHARLES A. WILLIAMS, Judge, presiding. Heard in this court at the March term, 1920. Reversed with judgment of *nil capiat* and for costs. Opinion filed November 29, 1920. Rehearing denied December 13, 1920.

WHEELOCK, NEWEY & MACKENZIE, for appellant.

EASTMAN, WHITE & HAWXHURST, for appellee.

MR. PRESIDING JUSTICE HOLDOM delivered the opinion of the court.

Defendant prosecutes this appeal in an effort to reverse a judgment for $4,210.75 entered against it on the finding of the trial judge.

The action is based upon a contract between the parties of date March 11, 1916, in which it was provided that the defendant agreed to sell and the plaintiff agreed to purchase a minimum of $2,000 worth of tin packages or more, as required by them, at prices and styles as appended to the contract, which plaintiff would need for actual use in its business between the date of the contract and April 1, 1917.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

Plaintiff sought by its statement of claim to recover damages for nonfulfillment of its orders dated February 10, 20 and 23, and March 5, 12 and 29, 1917, for cans under such contract, which orders at the contract prices aggregated the sum of $6,404.75. The damages claimed were the difference between the contract and the market price of the cans at the several times when they were ordered, which totaled $4,210.75.

Among other defenses interposed is that plaintiff first breached the contract by ordering and purchasing during its life its requirements from third parties while, as it is claimed, it was obligated by its contract to purchase all of its requirements during that time from defendant; that owing to such breach defendant was not obliged under the law to recognize or fill the subsequent orders given on the dates above mentioned.

In the record are found the following stipulated facts:

"That from time to time and during substantially all of the period between March 11, 1916 and February 10, 1917, the plaintiff purchased from parties other than defendant a substantial part of tin packages and cans needed by the plaintiff for actual use in its business during said period and respectively described in the contract referred to in and attached to the statement of claim filed in this suit."

If plaintiff first breached the contract, it cannot, under well-settled legal principles, enforce it against defendant or recover damages for the refusal of defendant after such breach to further carry out the contract on its part.

Whether plaintiff breached the contract depends upon whether it was bound under its terms, as matter of law, to purchase from defendant all of its requirements for use in its business during the life of the contract. This must be ascertained by the legal construction to be placed upon the words used in the contract. The words of the contract are that defendant agreed to sell and plaintiff agreed to purchase "a

Armstrong P. and V. Wks. v. Continental Can Co., 220 Ill. App. 90.

minimum of $2,000 worth of tin packages or more as required by them which buyers will need for actual use in their business between the date hereof and April 1, 1917.''

If this contract is not unilateral then it would follow that plaintiff was bound to buy and defendant bound to deliver cans in accord with the contract; and if defendant could not enforce the contract against plaintiff, then it is a unilateral contract and not binding upon either of the parties to it.

The position of plaintiff is that defendant under the contract obligated itself to deliver tin cans of the minimum value of $2,000, which plaintiff was bound to take, and as many more as plaintiff might require for actual use in its business during the term of the contract; and plaintiff insists that it had the right to go elsewhere, as it did, and buy the same class of commodity of such third parties as it might see fit; in other words, that plaintiff need not buy all of its requirements from defendant, but might at its election go elsewhere for them, and yet defendant would be bound to supply to plaintiff all of its called for requirements. This attitude of plaintiff seems to be at least illogical and contrary to well-settled legal principles that covenants in a contract must, to be enforceable, be mutually binding upon the parties to it. We think a fair construction of the contract is that plaintiff was bound to buy and defendant to deliver its product to the minimum amount of $2,000, and that plaintiff was not bound to take any more unless its business requirements necessitated it; that while the contract was in force plaintiff was not at liberty to go elsewhere for its needs, and in so doing breached the contract.

While the contract did not bind plaintiff to take more than the minimum of $2,000 worth of cans, yet during the term of the contract it was bound to purchase of defendant all of its requirements under that

contract. It was not at liberty to go elsewhere, during the term of the contract, for a supply of tin cans for use in its business. Whatever plaintiff's legitimate requirements might have been during the term of the contract, defendant was bound by the terms of the contract to deliver upon request therefor. It was not open to plaintiff to—as it did—purchase its requirements of third parties when cans were obtainable at a price less than that stipulated in the contract, and then to enforce the contract on orders to fill its requirements when the market price exceeded that of the contract price. This is in fact what plaintiff did—bought in the market when it was favorable to it and then ordered its requirements from defendant when the market price was higher than the contract price. *Manhattan Oil Co. v. Richardson Lubricating Co.*, 113 Fed. 923, was a contract in terms akin to the contract between the parties to this suit, regarding requirements of the purchaser, and it was insisted that the contract was invalid for want of mutuality and that the verdict should have been directed for defendant. In that case the court said:

"If the contract did not obligate the plaintiff to take any specified quantity of oil, manifestly there was no consideration for the promise of the defendant. But in consideration of the defendant's promise to sell, the plaintiff promised to buy all the oil it should require for its own use for a specified period of time. Read in the light of the previous business relations of the parties, it is plain that by this was meant that it should buy what oil it should require for its use in its manufacturing business. This is a very different promise from one to buy what it might desire, or from a mere option to buy."

It is patent that the contract in controversy was neither optional nor to take what plaintiff might desire, but, on the contrary, the language of the contract was to take what it might require in its business. Such a provision bound plaintiff, and the fact that it bought

elsewhere during the term of the contract is cogent evidence that during that time it needed what it bought to meet its requirements within the meaning of the contract.

It is again contended that the fixing of a minimum amount in the contract did not change the rule. *Staver Carriage Co. v. Park Steel Co.,* 104 Fed. 200, was a case in which there was a maximum of 14,000 sets and a minimum of 2,000 sets of tire steel contracted for, and the court said:

"The contract thus stated is of the class upheld and well defined in *National Furnace Co. v. Keystone Mfg. Co.,* 110 Ill. 427, 434, as one by which the seller was to furnish, and the buyer was to take, the entire supply of tire steel to be used in the buyer's works up to the date and within the amounts specified; 'that is, such a quantity, in view of the situation and business (of the buyer) as was reasonably required and necessary in its manufacturing business.' See also *Minnesota Lumber Co. v. Whitebreast Coal Co.,* 160 Ill. 85."

*Staver Carriage Co. v. Park Steel Co.,* 220 Ill. 412. was a contract whereby plaintiff became bound to deliver to defendant "all the tire steel of good and suitable quality which will be used in buyer's works prior to September 1, 1899, not to exceed 14,000 sets nor to be less than 10,000 sets," etc., and the court said:

"Within the limitations as to the number of sets fixed by the contract, it was a supply contract to meet the requirements of defendant's business."

*Russell, Burdsall & Ward v. Excelsior Stove & Mfg. Co.,* 120 Ill. App. 23, was a contract for requirements in stove bolts not to exceed ten million, and the court said:

"The contract in question is for appellee's 'requirements' in stove bolts from December 14, 1898 to January 1, 1901, and this means such amount of stove bolts as appellee should need in the regular course of its business and not what appellee might choose to require from appellant."

96     APPELLATE COURTS OF ILLINOIS.

Armstrong P. and V. Wks. v. Continental Can Co., 220 Ill. App. 90.

*National Furnace Co. v. Keystone Mfg. Co.,* 110 Ill. 427. *Minnesota Lumber Co. v. Whitebreast Coal Co., supra,* sustains the doctrine as above recited regarding so-called requirement contracts. Many other authorities in other jurisdictions to like effect are cited by counsel.

We therefore hold that as a result of plaintiff ordering from third parties, during the life of the contract, the needed commodities which it had agreed to purchase from defendant, as admitted by it in a stipulation found in the record, it thereby breached the contract, absolving defendant at its election from further performing the same on its part, and that its refusal to fill the orders after such breach was justified. This court said in *Consumers Mut. Oil Co. v. Western Petroleum Co.,* 216 Ill. App. 382:

"It is, however, a legal axiom that he who has first breached a contract cannot maintain an action for damages against the other party thereto for a failure to further proceed to carry out such contract subsequent to such breach."

And in that case it was held as an elementary and inflexible rule that a party suing for damages for a breach of a contract must not only aver but prove he is not himself in default as to the agreement for the breach of which the suit is brought. *Harber Bros. Co. v. Moffat Cycle Co.,* 151 Ill. 84.

Other questions are raised and argued, but what we have already said we think disposes of the right of plaintiff to recover, contrary to its contention.

As there can be no recovery by plaintiff under the contract in suit, as we have above construed it, the judgment of the municipal court is reversed with a judgment of *nil capiat* and for costs in this court.

*Reversed with judgment of nil capiat and for costs.*

DEVER and McSURELY, JJ., concur.