FRED K. HIGBIE

*v.*

J. P. RUST.

*Opinion filed October 24, 1904.*

1. CONTRACTS—*when contract is void for lack of mutuality.* A contract is void for lack of mutuality where there is no consideration for the promise of one party to sell as much of the commodity as the other may "want" except the promise of the other to take and pay for as much as he wants, there being no agreement that he shall want any quantity whatever, nor any means of determining what quantity, if any, he shall want. (*National Furnace Co.* v. *Keystone Manf. Co.* 110 Ill. 427, distinguished.)

2. SET-OFF—*unliquidated damages unconnected with contract sued on cannot be set off.* Unliquidated damages growing out of an alleged breach of a contract distinct from the contracts sued upon and in nowise connected therewith cannot be made the subject of a set-off.

*Higbie* v. *Rust,* 112 Ill. App. 218, affirmed.

WRIT OF ERROR to the Branch Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. A. H. CHETLAIN, Judge, presiding.

WALTER G. FRENCH, for plaintiff in error.

HOYNE, O'CONNOR & HOYNE, for defendant in error.

Mr. JUSTICE SCOTT delivered the opinion of the court:

On March 15, 1902, Rust recovered a judgment for $360 against Higbie in the superior court of Cook county, which has been affirmed by the Appellate Court for the First District, and Higbie brings the record here by writ of error.

Rust is engaged in the manufacture of wooden pails at Keene, New Hampshire, and Higbie is a jobber and dealer in wooden ware in Chicago, Illinois. During the summer of 1899, Higbie was at Keene and there had a conversation with Rust in reference to supplying his, Higbie's, customers with five-pound jelly pails manufactured by Rust. Higbie thus states what there occurred: "Rust said he had about three customers in the western country that he was supplying; if I would keep away from those three customers he would let me handle the rest of the trade out here, which I agreed to do; told me he would give me all the goods I wanted; I told him I would probably want two car-loads for a starter; 'All right,' he said, 'I will send you two carloads for a starter.'" A few days later Rust shipped Higbie a sample pail, and thereafter, on August 5, 1899, Higbie wrote Rust from Chicago acknowledging receipt of the pail, and inquiring whether Rust would care to ship him "one or two thousand dozen of same for a starter." Rust replied:

"*Mr. F. K. Higbie:*      "KEENE, N. H., *August 7, 1899.*

"DEAR SIR—Your letter of August 5 at hand and noted. In reply will say I will send you what five-pound jelly pails you may want at forty cents dozen f. o. b. Keene, and will allow five per cent for cash in ten days, but should expect you to keep away from the Glucose Sugar Ref. Co., Chicago, St. Louis Ref. Co., St. Louis, and Farrell & Co., Omaha, Neb.

"Respectfully,      J. P. RUST."

Thereafter, in September, 1899, Higbie ordered, by two separate letters, and in due course received from Rust, four thousand dozen of these jelly pails and paid him on account thereof $1000 at one time and $190 at another, and this suit was brought by Rust to recover a balance of $410 on account of the four thousand dozen.

On October 12, 1899, Higbie sent an order for a small car of the pails, (meaning thirty-five hundred dozen,) to which on October 16, Rust replied as follows:

"Your order for small car five-pound jelly pails has been received and noted. I do not see how I can ship before the 10th of November. I had on my books previous to your order, one for thirty-five hundred dozen, about two weeks run, and then yours would have to be made, and I will do the best I can to give you the goods promptly."

On October 28, 1899, Higbie wrote Rust the following letter:

"Since writing you asking you to ship another car-load of five-pound jellies, I find that you shipped my other order in two small cars, and the party I sold the goods to stated one car-load would be all he wanted just now, so do not send another car-load until I advise you. Just as soon as I dispose of this one, I will advise you, but I do not want to get too many in the warehouse."

. November 4, 1899, Higbie wrote Rust: "Just as soon as I can dispose of one of these cars which I have in the warehouse, I will need another car, and will immediately send you instructions on the same."

On November 7, 1899, Rust wrote Higbie that he had advanced the price of the jelly pails twenty-five per cent.

November 17, 1899, Higbie directed Rust, by letter, to ship him the other car of the pails, but the latter refused to ship them.

In the suit brought by Rust, Higbie filed a plea of the general issue and notice of set-off, claiming that there was a completed contract between the parties with reference to the order for thirty-five hundred dozen pails given by Higbie in October, and that he had suffered damages by reason of Rust's breach of the contract, in failing and refusing to ship the pails, to the amount of $1130.

The court excluded evidence offered by defendant below for the purpose of fixing the amount of his damages, and at

the close of all the evidence peremptorily instructed the jury to find a verdict for the plaintiff below, without, however, specifying the amount for which the verdict should be. Thereupon the jury returned a verdict finding the issues for the plaintiff and assessing his damages at $360, and, after overruling a motion for a new trial, judgment was entered by the court as above recited.

The record does not disclose the method by which the jury arrived at the amount of the verdict, but presumably it was by attempting to allow a five per cent discount on account of the payment of $1000, which they figured at $50, whereby the amount of Rust's claim was reduced from $410 to $360.

Higbie contends that the conversation at Keene and the letter received by him from Rust, dated August 7, 1899, together with the course of dealing between the parties shows, or tends to show, the existence of a contract between them, whereby Rust was obligated to furnish to Higbie all the five-pound jelly pails which the latter might want for his trade at the price named until notified by Rust that he would no longer furnish pails at that price, and that as the last thirty-five hundred dozen were originally ordered before the advance in price, Rust was obliged to furnish them at the former price. It will be observed that both by the conversation at Keene and the letter relied upon, Rust stated that he would furnish all the pails that Higbie "wanted." If it be conceded that the latter accepted this proposition, we think the contract cannot be enforced, for the reason that it is lacking in mutuality. By its terms Rust would be obliged to sell, but Higbie would not be obliged to buy. The fact that Higbie was an extensive dealer in pails, supplying many customers, does not alter the situation. He might elect to sell no five-pound jelly pails whatever, or to purchase all he should sell from some person other than Rust. There was no agreement on Higbie's part to take or want such pails as he might sell to his trade, or to take or want any pails whatever.

Where there is no consideration for the promise of one party to furnish or sell so much of the commodity as the other may want, except the promise of the other to take and pay for so much of the commodity as he may want, and there is no agreement that he shall want any quantity whatever, and no method exists by which it can be determined, whether he will want any of the commodity, or, what quantity he will want, the contract is void for lack of mutuality. *Hoffman* v. *Maffioli,* 104 Wis. 630; *Bailey* v. *Austrian,* 19 Minn. 535; *National Furnace Co.* v. *Keystone Manf. Co.* 110 Ill. 427.

Plaintiff in error regards the case last cited as supporting his position. In that case, the Keystone Manufacturing Company was engaged in a large manufacturing business, necessarily using a large quantity of iron in the transaction of its affairs, and contracted for all the iron, at a fixed price, which it would need in its business during the ensuing year, and the National Furnace Company agreed to furnish the same at that price. In that case, there was something by which to measure the needs of the purchaser and fix the amount of the commodity to be delivered under the contract, viz., such quantity as should be needed during the year in the manufacturing business which the purchaser was then conducting and in which it was certain some quantity would be needed. Here there is no method to determine what quantity, if any, the purchaser would want, as his wants would be measured by his sales and so far as Rust was concerned, would only exist if he, Higbie, was unable to purchase elsewhere at a better price. We regard *Bailey* v. *Austrian, supra,* as in point.

It is insisted, however, that if this view be correct the court erred in excluding evidence offered to show the extent of Higbie's damages, for the reason that the correspondence in reference to the last thirty-five hundred dozen pails ordered, in itself shows a contract to supply such pails at the price originally quoted, and therefore Higbie is entitled to recover the damages he sought to prove. We need not determine this question in this suit for this reason: the two orders for the first four thousand dozen pails ordered, when

accepted, constituted separate contracts which have been performed by Rust, and he seeks to recover in assumpsit the amount of money which Higbie agreed to pay for those pails. The latter seeks to offset unliquidated damages which he charges resulted from the violation of an entirely distinct and independent contract. Such unliquidated damages could not be offset, as they grew out of the alleged breach of a contract other than those sued upon and in nowise connected therewith. *Hawks* v. *Lands,* 3 Gilm. 227; *DeForrest* v. *Oder,* 42 Ill. 500; *Clause* v. *Bullock Printing Press Co.* 118 id. 612.

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*