JAMES P. TRAINOR, DOING BUSINESS AS THE TRAINOR
FUEL AND TRANSFER COMPANY v. BUCHANAN
COAL COMPANY AND ANOTHER.
OLD BEN COAL CORPORATION, APPELLANT.[1]

January 12, 1923.

No. 23,063.

**Offer and acceptance to buy coal bound both seller and buyer.**

1. A proposal to ship coal during the period of a year at certain prices and up to a certain amount was accepted, and the buyer agreed to order his supply of coal according to the terms and conditions of the offer. *Held* a valid contract binding the seller to sell and the buyer to buy his supply, and binding on both parties within the rule that if the buyer's freedom to contract has been fettered, a binding contract results.

**Mercantile reports as to buyer's credit admissible in evidence.**

2. The contract provided for credit, and further that, if, in their judgment, the credit of the buyer becomes impaired, the sellers may stop shipment. The sellers stopped shipment, asserting that they did so under this provision of the contract. Sellers offered in evidence a report from a mercantile agency as, in part, the basis of judgment that buyer's credit had become impaired. *Held* error not to receive the report.

Action in the district court for Hennepin county to recover $10,-000 for breach of contract. The case was tried before Gould, J., who denied plaintiff's motion for a directed verdict, and a jury which returned a verdict for $4,000. From an order denying its motion for judgment notwithstanding the verdict or for a new trial, Old Ben Coal Corporation appealed. Reversed.

*Lancaster, Simpson, Junell & Dorsey* and *Good, Childs, Bobb &. Wescott,* for appellant.

*Thompson, Hessian & Fletcher,* for respondent.

[1]Reported in 191 N. W. 431.

HALLAM, J.

This is an action by buyer against seller to recover damages for breach of contract of sale. Plaintiff recovered damages. Defendant appeals.

1. On April 26, 1916, defendant's predecessor in interest submitted this proposal in writing duly signed:

"We hereby propose to ship you at Minneapolis, Minnesota, so much of our coal as you may order (not to exceed the tonnage of each size as shown below) during the period commencing this date and ending March 31, 1917, at a net price to you of for April and May, $1.45, June 1.50, July, 1.55, August, 1.65, Sept. 1916 to March 1st, 1917, 1.75 and for March 1.60 for Shall Egg Furnace and Lump. On Cookstove from April 1st to August, 1.40, and from August to March 31, 1917, 1.50 per ton. Total tonnage, 2,250 tons."

Beneath this statement plaintiff wrote and signed the following:

"We hereby accept the above proposal, and agree to order our supply of coal according to the above terms and conditions."

Plaintiff had been a retail coal dealer for about two years and had a business involving the sale of from 2,000 to 2,500 tons annually. Defendant contends that the contract is void for want of mutuality under the doctrine of Bailey v. Austrian, 19 Minn. 465 (535). We have recently considered Bailey v. Austrian in its application to contracts of this character. City of Marshall v. Kalman, 153 Minn. 320, 324, 190 N. W. 597. It was there held that one test of the applicability of Bailey v. Austrian, as applied to a buyer who has some reasonably definite requirement of a supply of the thing sold, is "whether the buyer has so bound himself that he has lost the right to buy from whomsoever he pleases. If his freedom to contract has been fettered by the acceptance of the seller's proposal, a binding contract results." In this case the buyer so bound himself that he lost the right to buy from whomsoever he pleased. In express terms, he accepted the seller's proposal and agreed "to order our supply of coal according to the above terms and conditions." This obligated him. As his counsel states, there was an "absolute agreement" on his part to order of the seller "our supply."

2. The terms of the contract were that settlement be made on or before the tenth day of each month for all coal shipped during the previous month, and, that, "if in their judgment your credit becomes impaired, Buchanan Coal Co. reserves the right to stop shipments." No shipment was called for until November. Defendant then refused to make shipment except for cash accompanying the order, and now contends that, in its judgment, the credit of plaintiff had become impaired, and that it terminated the contract and stopped shipment for that reason. There was some question as to whether this was the real ground of defendant's refusal. The court, however, submitted to the jury the question whether defendant had the right to stop payment on the ground that the credit of plaintiff had become impaired, and we think the court was right in so doing.

Defendant offered in evidence the account of payments under a previous contract, and also offered in evidence a report from the Bradstreet Company, a mercantile agency organized to secure credit reports and credit ratings for clients. This report was dated November 6, 1916, and was procured before defendant finally refused to ship to plaintiff on credit. The report stated, among other things, that on January 13, 1916, their investigator reported, "the business record of the concern is not good as they have failed to meet most of its obligations promptly and fairly." Under date of November 6, 1916, there was added "some local houses decline to sell them except for cash and others hold them strictly to short time settlements. They are said [to be] still owing an old account. It is believed there is little change in their condition and no basis for credit is suggested by authorities."

Defendant offered this report, not as evidencing the truth of the statements it contained, but for the purpose of showing the good faith of defendant in refusing shipment, and to show the information on which it acted in refusing credit. In our opinion the report should have been received. The court charged the jury that the contract does not give the "arbitrary right without reason" to cancel the contract, "without some facts upon which to base that decision, and the reason therefor must be disclosed by the evidence," and must be of sufficient moment "to justify the defendant in exer-

cising the right to stop shipments, because it believed from its experience with the plaintiff and other investigation it had honestly made, that plaintiff was not willing and financially able to meet the payments for the coal ordered and shipped, as provided by the contract." He further charged that it was not necessary that defendant prove that plaintiff was not willing or able to pay. "It is more a matter of good faith based on honest judgment" he said, and if defendant believed "that the facts disclosed as to the financial credit of plaintiff warranted the defendant, in the exercise of honest judgment and good faith, in stopping the shipments of this coal then * * * your verdict will be for the defendant." The charge correctly stated the law. But the charge is, in itself, a demonstration that the report should have been received, for it was one of the principal facts upon which defendant's decision was based. It is common usage of business men who desire information as to a business man's credit, to resort to the standard mercantile agencies, which make it a business to secure and compile that kind of information. Perhaps no better basis of good faith in arriving at a judgment as to a business man's credit would be recognized, than the information furnished by such a mercantile agency. The jury could not determine defendant's good faith without knowing the information on which it acted. The court thought there was danger that the jury would take the report as evidence of the facts reported. That danger could be largely avoided by careful instruction from the court. In any event, it is a chance we are obliged to take. It was necessary to an intelligent verdict that the jury have the facts on which defendant acted. The question whether there was just ground for defendant's "judgment" that plaintiff's credit had become impaired was a close one on the facts and the exclusion of this evidence was material error for which a new trial must be granted.

Order reversed.