## M. S. GREEN v. ISABEL THOMAS LOVEJOY, AS EXECUTRIX OF THE ESTATE OF ALLEN P. LOVEJOY, DECEASED.[1]

April 20, 1923.

No. 23,312.

**Agreement to sell whole output sufficient consideration for option.**

1. Where plaintiff agreed to sell and defendant to buy all the lumber that plaintiff manufactured in a certain year not exceeding a specified quantity, the obligation of plaintiff to sell only to defendant was a sufficient consideration to sustain plaintiff's option.

**Measure of damages for cancelation of unperformed part.**

2. Where defendant canceled the contract without cause, plaintiff's damages for the cancelation of the unperformed part of it are measured by the difference between the contract price for such part and what it would cost him to perform it.

Action in the district court for St. Louis county to recover $5,625 for breach of contract. The case was tried before Cant, J., who at the close of the testimony denied defendant's motion for a directed verdict, and a jury which returned a verdict for $1,345.03. Defendant's motion for judgment notwithstanding the verdict was denied and her motion for a new trial was denied provided plaintiff consented to a reduction of the verdict to $484.24. Plaintiff's motion to amend the order granting a new trial was granted and the following paragraph added: "In the opinion of the court it was error to permit a recovery beyond the amount which might be due under the so-called contract between the parties on account of the lumber

[1]Reported in 193 N. W. 173.

which had actually been piled on the dock at Reservation Bay, referred to in said contract. Under the instructions in the case a recovery was permitted beyond this limit. Because of such error a new trial is granted." From the order of April 3, 1922, as amended by the order of May 1, 1922, plaintiff appealed. Reversed.

*A. E. Parker*, for appellant.

*E. L. Fogarty* and *H. H. Phelps*, for respondent.

TAYLOR, C.

Plaintiff is a settler in the eastern part of Cook county. He possessed a small sawmill located about three miles from Lake Superior and had made a contract with the Lesure Lumber Company by which he had agreed to cut and remove the merchantable timber from 16 forty acre tracts of land belonging to that company by October 15, 1919, and to pay that company two dollars per thousand feet for the timber. so cut and removed. Defendant is engaged in the lumber business at Duluth, Minnesota, under the name of Duluth Lumber Company.

On December 31, 1918, plaintiff as party of the first part and defendant as party of the second part entered into a contract which, so far as here material, reads as follows:

"Party of the first part agrees to sell and the party of the second part agrees to buy all white pine lumber that party of the first [part] manufactures during the year 1919, not to exceed one million (1,000,000) feet.

"Party of the second part agrees to pay twenty-seven ($27.00) dollars per thousand for No. 4 and better and seventeen ($17.00) dollars per thousand for No. 5, f. o. b. vessel or barge at Reservation Bay, Minn.

"Party of the second part agrees to advance thirteen dollars fifty cents ($13.50) per thousand on No. 4 and better and eight dollars fifty cents ($8.50) per thousand for No. 5 when in pile on dock."

Before the end of March, 1919, plaintiff had manufactured and placed in piles on the dock at Reservation Bay 110,000 feet of lumber and asked defendant for the stipulated advance. Plaintiff was in financial straits. His property was encumbered and he had no

funds with which to pay for the timber or to pay his employes. Defendant refused to make the advance unless he gave a bond to secure her against liens. He was unable to give such a bond and defendant refused to proceed further and terminated the contract. Liens were filed and the lumber on the dock was seized and sold under them. For lack of means, plaintiff was unable to get out the remainder of the timber. He brought this action for damages for breach of the contract.

Defendant claimed that plaintiff had represented that he owned the timber and had sufficient capital to enable him to cut, haul and manufacture it and deliver the lumber at the dock, and that she had the right to terminate the contract because these representations were not true. She further claimed that the contract was without consideration and void because plaintiff had not agreed to manufacture any lumber whatever. Plaintiff denied making misrepresentations of any kind, and asserted that the contract was valid and binding. The court directed the jury to return a verdict for defendant if they found that plaintiff had made the misrepresentations charged, and, if they did not so find, to determine the amount of plaintiff's damages. The court instructed the jury that, if plaintiff was entitled to recover, the amount to which he was entitled on account of the lumber manufactured and piled on the dock was the difference between the contract price and the market value of that lumber on board vessels at that place at the time the contract was broken, and that the amount to which he was entitled on account of the timber not manufactured was the difference between the contract price for the lumber and the cost of getting out the timber and manufacturing and delivering the lumber, including the purchase price of the timber. The jury returned a general verdict of $1,345.03 for plaintiff, and in a special verdict gave the market value of the lumber piled on the dock as $2,366.71.

Defendant made an alternative motion for judgment or for a new trial. On the ground that it had erred in permitting a recovery of damages for the cancelation of the unperformed part of the contract, the court granted a new trial unless plaintiff consented to reduce the verdict to the sum of $484.24, the amount allowed for loss on the

lumber piled on the dock. Plaintiff appealed, and contends that the court erred in ruling that he was not entitled to damages for the cancelation of the unperformed part of the contract.

The verdict of the jury determined that defendant's charges of fraudulent misrepresentations were unfounded, and that she had renounced and canceled the contract without cause. It follows that she is liable in damages if the contract was valid. She contends that it was void, so far at least as it remained unperformed, for the reason that plaintiff was under no obligation to manufacture any more lumber. It is true that the contract did not bind plaintiff to manufacture any lumber whatever. But it gave him an option to manufacture any quantity he saw fit, not exceeding one million feet. If there was a sufficient consideration for this option, it was valid. Plaintiff agreed to sell to defendant all the white pine lumber that he manufactured in 1919. He so bound himself that he lost the right to sell to any one else. He "tied his hands" so that he could deal with no other. While he did not bind himself to manufacture, yet he did bind himself to sell to defendant at the stipulated price all the lumber that he did manufacture in that year. That such an obligation is a sufficient consideration to sustain an option has been determined by this court in two carefully considered cases decided since this appeal was taken. City of Marshall v. Kalman, 153 Minn. 320, 190 N. W. 597; Trainor v. Buchanan Coal Co. 154 Minn. 204, 191 N. W. 431.

Defendant insists that the court adopted an incorrect measure of damages in respect to the timber not manufactured. Not having appealed, defendant is not in position to raise this question, except as it may be urged as a ground for sustaining the order granting a new trial, although not the ground on which that order was based. We deem it sufficient to say that the rule applied by the court is in accord with the rule stated in Baessetti v. Shenango Furnace Co. 122 Minn. 335, 142 N. W. 322.

Order reversed.